## EASTERN TRANSP. CO. v. BLUE RIDGE COAL CORPORATION.

District Court, S. D. New York.

Oct. 29, 1943.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for cross-libellant.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for cross-respondent.

COXE, District Judge.

This is a cross-libel of the Eastern Transportation Company against the Blue Ridge Coal Corporation to recover the sum of $5,750.88, with interest, for the transportation of certain quantities of coal by the Eastern Transportation Company, cross-libellant, for the Blue Ridge Coal Corporation, cross-respondent, from Hampton Roads, Norfolk, Va. to New York, N. Y. The cross-respondent does not dispute the claim of cross-libellant, but denies that it owes any money to cross-libellant because of a claim of set-off and recoupment.

During the coal year commencing April 1, 1941, and ending April 1, 1942, Eastern was a carrier, owning barges and tugs, and Blue Ridge was engaged in the re-tail sale of coal in the City of New York. Blue Ridge purchased coal from the Carter Coal Company, which had mines at Susanna, West Virginia, and in order to transport from Hampton Roads, Norfolk, Va., to New York City, the coal purchased from Carter, Blue Ridge entered into a contract with Eastern, dated as of the 1st day of April, 1941. This contract, among other things, provided that Eastern would furnish to Blue Ridge, during the coal year, to wit, from April 1, 1941, to April 1, 1942, for the transportation of coal from Hampton Roads, Norfolk, Va., to New York City, such barges as Blue Ridge might require to a maximum of one barge per month from April, 1941, to September, 1941, inclusive, and of four barges per month on continuous trips from October 1, 1941, through March, 1942. The contract obligated Blue Ridge to ship, on the barges furnished by Eastern, coal, in cargo lots sufficient and suitable for the berth of Blue Ridge, at Greenpoint, Brooklyn, N. Y., and other berths, to be designated by Blue Ridge, in New York Harbor; it further provided that reasonable notice would be furnished by Blue Ridge to Eastern as to when cargoes would be available for loading, and that reasonable notice would be furnished by Eastern to Blue Ridge as to when barges would be available. At the same time, Blue Ridge entered into a contract with another barge company, namely, the P. Dougherty Company, which contract ran concurrently with Eastern's contract. Although the Dougherty contract was not offered in evidence, the proof shows that the contract provided for three barges each month from October, 1941, through March, 1942. Both contracts were negotiated through Maxwell Harris, a Marine Chartering Agent of Boston, Mass., who acted as a broker for Eastern, and was paid a commission of 2½% by that company.

On or about March 13, 1941, Carter set up an allocation schedule of coal to be delivered monthly to Blue Ridge during the coal year. This schedule was prepared by Carter without consultation with Blue Ridge. The total tonnage programmed for the entire coal year was 217,450 tons, and 176,741.95 tons were actually shipped, leaving a deficit at the end of the coal year of 40,708.05 tons. This deficit arose during the first six months of the coal year, to wit, from April 1, 1941, to October 1, 1941. In this period, the schedule called for the shipment of 108,100 tons, but only

54,985.45 tons were actually shipped, so the deficit on October 1, 1941, was 53,114.-55 tons. Carter felt obligated to deliver to Blue Ridge the full tonnage programmed, and it planned to make up the deficit during the last six months of the coal year. This it was unable to do, however, for during this last six-month period, as against the original allocation schedule of 109,350 tons, only 121,056.45 tons were shipped.

Prior to the commencement of each month, Carter notified Harris of the number of shipments from its mines that it intended to make for Blue Ridge during the month, and also notified him of the days on which these shipments would be ready to load, and Harris made the necessary barge arrangements, and notified Carter of the schedule for the arrival of the barges. Thus on September 29, 1941, Harris notified Carter that in connection with Carter's October schedule for about 20,-000 tons for the account of Blue Ridge, he was tentatively setting up seven barges, which would give seven loadings during the month. The October schedule called for two loadings by the "Joseph Hooper", and one loading by the "Luther Hooper", both Eastern's barges, and for four loadings by three Dougherty barges. All of these seven cargoes were actually loaded by November 1, 1941, but Blue Ridge received only 15,975.90 tons, whereas it was scheduled to get 23,350 tons. In November, the amount of coal that Carter shipped was limited because of a strike in the mines, and although the monthly schedule called for 24,200 tons, only 9,664.85 tons were shipped, and all coal sent to tidewater by Carter was taken care of by Dougherty barges. On November 29, 1941, a schedule of December loadings was set up, and this schedule called for eight or nine loadings. Provision was made for one loading by the "Joseph Hooper", an Eastern barge, on December 9, 1941, and it was understood that a decision would be made later as to the boats to be used for the cargoes to be shipped in the latter half of the month. On December 8, 1941, Harris advised Blue Ridge that the "Luther Hooper" would load on December 10th, and again on December 27th. Neither the "Joseph Hooper" nor the "Luther Hooper" loaded during December, but the barge "Cohasset", which was chartered with the approval of Eastern, was loaded during that month. Actually, eight loads were carried, and 28,722.70 tons were shipped, although only 16,850 tons were originally scheduled for shipment. For January, the original schedule called for the shipment of 13,700 tons, and 25,409.-90 were actually shipped. The monthly schedule which was agreed upon by Harris and Carter on December 22, 1941, provided for nine cargoes between January 2, 1942, and February 2, 1942, and eight shipments were actually made. These included two loadings by the "Ann Hooper", an Eastern barge. At the end of January, there were 3,101 tons of coal on the piers, which was approximately one barge load. The original schedule for February, 1942, provided for the shipment of 13,700 tons, and 19,090.45 tons were shipped. The monthly schedule called for seven cargoes, and six were accomplished, one by an Eastern barge. At the end of the month, there were still 2,904 tons on the piers. During February, the "Ann Hooper" an Eastern barge, which had been assigned to Blue Ridge, was sunk, and Blue Ridge moved one cargo all rail to New York.

For March, 1942, seven cargoes were set up, including one February cargo, and six were accomplished. In addition, a cargo which was set up for loading on March 23 was cancelled on March 17, 1942, and the shipment was sent all rail to New York, and a cargo which was set up for loading on March 30, 1942, was cancelled. During this month, the original program called for the shipment of 17,550 tons, and 22,192.65 tons were actually shipped.

Blue Ridge did not pay Eastern for the cargo that was loaded on the barge "Luther Hooper" on February 25, 1942, and for the cargo that was loaded on the same boat on March 23, 1942, and Eastern now seeks to recover for the transportation of such coal. Blue Ridge admits that it has not paid for such transportation, and that the charges are in accordance with the contract; but it sets up by way of defense and recoupment a claim for the additional transportation charges by rail incurred in February and March, 1942, and a claim for the profit that was lost on the coal which Carter had allotted to it over the coal year, and which it did not receive, less the coal that Carter was prevented from shipping by reason of labor difficulties. In its answer to the cross-libel, Blue Ridge claimed that it had been damaged in the sum of $82,139.88, and in its answers to the interrogatories pro-

pounded by Eastern, it asserted that the additional rail transportation charges amounted to $6,216, and that the loss of profits computed upon 46,600 gross tons amounted to $64,075. At the trial, it offered evidence to show that 5,635 tons were shipped by rail, 1,680 tons consigned to the Newtown Creek Terminal, and 3,955 tons consigned to the Harlem River Terminal, and that the increased transportation cost was $4,929.40. Blue Ridge also claimed at the trial that at least 25,055 tons were lost to it because of the failure of Eastern to furnish barges, and that a profit of $1.37½ per ton, or at least $34,454.62 would have been made on this tonnage if received.

It is undisputed that Eastern did not furnish four barges to Blue Ridge on continuous trips from October, 1941, through March, 1942. In October, 1941, Eastern supplied two barges, in November none, and in December one. In January, 1942, two loadings were made by Eastern, and one in February, and one in March. It is not clear from the evidence that Blue Ridge ever requested Eastern to furnish four barges on continuous trips from October 1, 1941, to March 31, 1942, but it is clear that Blue Ridge gave Eastern notice from time to time that additional cargoes were available for loading, particularly from the end of November, 1941, until the end of March, 1942, and that Eastern failed to fulfill its obligations under the contract. This notice was given not only to Harris, but also directly to Eastern; and whether or not Harris acted as agent for Eastern in the transaction, Eastern had notice all along that cargoes were available for loading, and it failed to supply the necessary barges.

Between October, 1941, and March, 1942, Carter was almost daily in communication with Harris concerning the Blue Ridge loadings. From November 27, 1941, until the end of March, 1942, the coal on the piers at tidewater, and en route to the piers, ran from 2,000 to 9,000 tons, and Carter had to stop routing coal to the piers because of demurrage charges. Wolf, of Blue Ridge, saw both Dougherty and Hooper (of Eastern) in Baltimore in December, 1941, and endeavored to impress upon them the importance of moving their barges, and Harris was apparently concerned about the situation because he wrote Eastern on January 2, 1942, that he was worried about the fact that Dougherty was confining them to the three barges as per the contract. On January 3, Harris wrote Eastern that he had talked to Wolf and had pacified him with the report that the barges "Cohasset" and "Ann Hooper" would leave that day. On January 13, Harris wrote Eastern that the situation was really getting serious. On January 16, he wrote Eastern expressing the hope that the "Luther Hooper" would be on the run after the Atwater trip, which would give Blue Ridge only two of the barges against the charter for four on continuous trips. On January 19, Blue Ridge complained to Harris that barges were not available for loading the coal. Harris, on January 22, advised Eastern that if the "Luther Hooper" could be released for Blue Ridge, it would save the day, and on January 26, he wrote Eastern that if they had the "Luther Hooper", in addition to the "Ann Hooper", it would have enabled them to fulfill their obligations 100 per cent, and he added that they were falling shy just about the amount of tonnage which the "Luther Hooper" would have been able to lift.

On February 10, Harris wrote Eastern that the loss of the "Ann Hooper" was bound to be felt all around, as they could not replace her at the moment, and while there were plenty of ship hulls around, he did not think that anyone was going to rush into that type of equipment. He also wrote Blue Ridge that he was asking Eastern to replace the "Ann Hooper", but that it did not look very encouraging. On February 13, Carter advised Harris that the loss of the "Ann Hooper" had made it necessary for Blue Ridge to move one cargo of February coal to New York by rail, despite the expense involved, and on February 14, Harris wrote Blue Ridge that he had been unable to work out a substitute for the "Ann Hooper", "and now understand you will make arrangements to ship same by rail". On the same day, Harris advised Eastern that Blue Ridge was shipping a cargo by rail because of the loss of the "Ann Hooper".

Blue Ridge was clearly justified in making the February and March shipments by rail, and the additional transportation charges which were incurred by Blue Ridge were incidental to, and were losses directly caused by, the failure of Eastern to fulfill its obligations under the contract. The case is different, however, with respect to the anticipated profits

claimed by Blue Ridge. These claimed profits are too speculative and remote to be recovered as damages resulting from the breach. Howard v. Stillwell & Bierce Manufacturing Co., 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147; Chapman v. Fargo, 223 N.Y. 32, 119 N.E. 76, L.R.A.1918F, 1049, Ann.Cas.1918E, 1054; Rives v. American Railway Express Co., 227 App. Div. 375, 237 N.Y.S. 429. There is no proof that Blue Ridge could have obtained the lost tonnage of 25,055 tons even if additional barges had been made available; there is no evidence that Blue Ridge could have sold the additional coal if it had been received, or that it would have made the anticipated profits claimed; and there is nothing to show that the additional coal could not have been obtained elsewhere by Blue Ridge. The claim of the cross-respondent is allowed by way of set-off and recoupment in the amount of $4,929.40, with interest.

There may accordingly be a decree for the cross-libellant for $5,750.40, with interest, less $4,929.40, the amount of the claim of the cross-respondent as allowed, with interest, all without costs to either party.